UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA COLE-TINDALL, in her official capacity as the King County Sheriff; and KING COUNTY, a home rule charter county,<br><br>                                 Plaintiff,<br><br>vs.<br><br>CITY OF BURIEN, a municipal corporation,<br><br>                                 Defendant. | No. 2:24-cv-325<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, Sheriff Patricia Cole-Tindall ("Sheriff") and King County, hereby allege the following:

## I. INTRODUCTION

1. Like judges and other government officials, King County Sheriff Patricia Cole-Tindall and her Deputies are sworn to uphold the U.S. Constitution. The solemn oath taken by these law enforcement officers reflects a foundational principle that we are governed by the rule of law, not the whims of humans who issue directives contrary to the Constitution.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 1
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

2. The imperative to uphold the Constitution is central to this case. King County and the City of Burien ("Burien") have entered into an Interlocal Agreement ("ILA"), whereby the King County Sheriff's Office ("KCSO") provides local police services to Burien for a fee.

3. On March 4, 2024, the Burien City Council adopted Ordinance No. 832 criminalizing the use of "nonresidential public property as a living space in Burien at all hours." The ordinance distinguishes between "non-prohibited" areas where there are some exceptions to the blanket crime and "prohibited" areas of Burien where "the City Manager may prohibit the use of . . . nonresidental property as living space" without exception. The council agenda materials included a map from the City Manager referenced in the summary in the agenda that purports to prohibit the unhoused from utilizing large swaths of Burien for basic living activities. The council chose not to codify the map or otherwise limit the City Manager's discretion so that it "can be amended" by the City Manager "as needed."

4. Although Burien had disclosed Ordinance No. 832 only one business day prior to the meeting and made no outreach efforts to King County, it deemed the ordinance an emergency and made it effective immediately. After evaluating the matter with legal counsel, Sheriff Cole-Tindal informed Burien of her "substantial concerns that Burien's new ordinance violates binding federal case law" and that KCSO "will not enforce on the public camping portion of [the ordinance], until the constitutionality of the ordinance is resolved."

5. The City Manager responded with claims that the Sheriff's refusal to enforce Ordinance No. 832 was a breach of the ILA and that Burien would be hauling King County before an oversight committee. He further threatened to withhold millions of dollars of contract payments "under the ILA due to KCSO's egregious violation of a longstanding contract with the City of Burien"

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 2
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

– actions he took later that day.  Mayor Kevin Shilling of Burien endorsed the threats of his City Manager and pointed out that the constitutionality of an ordinance is "for judges to decide."

6. Although Sheriff Cole-Tindall is oath-bound to ensure respect for the constitutional rights of all citizens by taking immediate, short-term action refusing the enforcement of a facially unconstitutional law, King County fully agrees with Mayor Shilling that *judicial* resolution of the constitutionality of Ordinance No. 832 is both necessary and appropriate.  In this action, King County seeks declaratory judgment from this Court that Ordinance No. 832 is facially unconstitutional and that King County has not breached the ILA because it imposes no obligation on KCSO to enforce laws that are facially unconstitutional.  King County further seeks an injunction prohibiting Burien from requiring the enforcement of Ordinance No. 832 or engaging in punitive measures based on KCSO's refusal to enforce Ordinance No. 832.

## II.  PARTIES

7. Plaintiff Patricia Cole-Tindall is the Sheriff of King County, duly appointed to this position pursuant to King County Charter § 350.20.40.  In this capacity, she oversees all operations of KCSO, including the Burien Police Department ("BPD").

8. Plaintiff King County is a home rule charter county formed under Wash. Const. Art. 11 §4 and a municipal corporation.

9. Defendant City of Burien is a Washington code city and a municipal corporation.

## III.  JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

11. This Court is the proper venue for this dispute pursuant to 28 U.S.C. § 1391.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 3
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

## IV.  FACTS

12. King County and Burien have been parties to an ILA relating to law enforcement services since 2000. A copy of the original ILA and amendments is attached as Exhibit A.

13. Per the ILA, King County and Burien follow the "City Department Model," where KCSO deputies operate as the City of Burien Police Department, or BPD. Uniforms and police vehicles are branded with the BPD logo. Burien is obligated to pay King County for these police services. The ILA automatically renews from year-to-year unless either King County or Burien elects to terminate the agreement, which is governed by a specified termination process.

14. Under Appendix C, § (I)(B)(4)(a)(i) of the ILA, the Sheriff "maintains authority and responsibility" over the Chief of Burien PD and any deputies assigned to the department. Among the issues in the ILA "that fall within the purview of the KCSO and must be consistent between the King County Sheriff's Office and the contracting entities" is "standards of conduct." App. § (II)(D)(12).

15. Sheriff Cole-Tindall and her deputies are "general authority Washington peace officers," who are "commissioned to enforce the criminal laws of the state of Washington generally." RCW 10.93.020(4). As commissioned law enforcement officers, the Sheriff and her deputies take an oath to support the Constitution of the United States and the constitution and laws of the state of Washington, and to faithfully perform the duties of the office. "It is the policy of the state of Washington that all commissioned, appointed, and elected law enforcement personnel comply with their oath of office and agency policies regarding the duty to be truthful and honest in the conduct of their official business." RCW 43.101.021.

16. The Sheriff and all KCSO deputies are law enforcement officers under the auspices of the Washington Criminal Justice Training Commission ("Commission"), which has the authority to grant, deny, suspend or revoke the certification of a peace officer. RCW 43.101.080(2). The

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 4
[No: 2:24-cv-325]

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

<mark>

Commission may revoke a peace officer's certification if the officer, among other things, has "[e]ngaged in a pattern of acts showing an intentional or reckless disregard for the rights of others, including but not limited to violation of an individual's constitutional rights under the state or federal Constitution" or "[e]ngaged in any conduct or pattern of conduct that . . . disrupts, diminishes, or otherwise jeopardizes public trust or confidence in the law enforcement profession and correctional system; or demonstrates an inability or unwillingness to uphold the officer's sworn oath to enforce the Constitution and laws of the United States and the state of Washington." RCW 43.101.105(3)(j)(ii), (iv).

17. Like other jurisdictions throughout the county, Burien has the responsibility to serve an increasing population of unhoused persons. The unhoused have slept on public land in Burien for many years.

18. Burien has more unhoused persons than available shelter space.

19. The shelter space currently available in Burien primarily serves women and children. The city offers no shelter options for adult males, youths or couples experiencing homelessness.

20. Using a $1 million grant and 35 pallet shelters supplied by King County, Burien is planning to establish a temporary emergency housing village on property owned by Seattle City Light. As of early February 2024, Burien was reportedly considering whether zoning changes were necessary and was working on a request for proposal to operate the village. It is unknown when this facility will open to serve homeless populations.

21. Burien is also constructing a residential building for supportive housing where 30% of the 95 units will be available to homeless persons. This project will not open until early May 2024. Even with these facilities, Burien will not have sufficient housing for homeless persons that reside within its borders.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 5
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

22. Burien has banned public camping in its parks since 2007. Although it was illegal to camp in a park, the rest of Burien was available for public camping activities. Historically, KCSO has effectively enforced this law by merely by advising persons who are camping in Burien parks of the applicable ordinance. Arrests were rarely necessary because campers would voluntarily move to locations in Burien where camping was not prohibited. Since 2018, there has been one arrest for camping in a Burien park, which occurred after multiple warnings and connection to service agencies.

23. Burien's efforts to address public camping by unhoused residents have intensified since the hiring of its current City Manager in late 2022. By late 2022 or early 2023, a significant gathering of homeless campers were located on public property adjacent to the Burien City Hall and the Burien Library. The Burien Library is operated by the King County Library System (KCLS"), a special purpose district separate from Burien or King County. KCLS allows unhoused persons to use the library's facilities and provides Wi-Fi and computer access to the public. KCLS also engages in partnerships that deliver assistance to unhoused people, which includes connecting them to mental health specialists, and job, small business and tax support. *See* KCLS 2022 Annual Report. https://kcls.org/wp-content/uploads/sites/20/2023/06/2022-Annual-Report-053123-1.pdf

24. Although no city ordinance prohibited camping in this area in February 2023, Burien worked with the library to adopt building rules prohibiting camping in the spaces adjacent to the buildings. KCSO worked with Burien on a plan to relocate the unhoused individuals camping adjacent to the library that would comply with *Martin v. City of Boise*, 920 F.3d 584, 618 (9th Cir. 2019), and *Johnson v. City of Grants Pass*, 50 F.4th 787, 807 (9th Cir. 2022), *cert. granted* ___ U.S. ___ (Argument set for April 22, 2024). In particular, the plan included providing notice to the campers and outreach to assist them in finding alternate housing with the understanding that every displaced person would be offered new housing prior to removal of the encampment.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 6
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

25. But this did not happen. Instead, when Burien sought to remove unhoused persons from library location in late March 2023, Burien had no plan for housing them, nor did it identify an alternative camping location. Through the efforts of a City Council Member and a member of the Burien's Planning Commissioner, these campers voluntarily re-located to a nearby city-owned lot that had been used as a dog park.

26. In May 2023, Burien developed a plan to remove campers from the former dog park lot by leasing the property to a non-profit entity, which would then claim private property status to trespass unhoused persons before reopening the property for public use as a dog park. Through this lease arrangement, which would make public property private and then public again solely for the purpose of removing the unhoused, Burien sought to avoid its constitutional responsibilities as laid out in *Boise* and *Grants Pass* to offer shelter space. King County informed Burien that its plans "to relocate unhoused campers off the City Lot without offering alternative housing violates the Constitution" and that "KCSO personnel cannot participate in the effort." *See* attached Exhibit B, at p. 3. Undeterred, Burien took this action on its own by using city workers and trucks.

27. A number of unhoused persons that were camped in the dog park relocated to a triangle-shaped island in the middle of several roads at the intersection of SW 120th and Ambaum Boulevard SW on the outskirts of Burien. The triangle lot encampment was surrounded by cars and buses traversing the busy roadways:



COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 7
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

28. On September 25, 2023, following several months of debate and deliberation, the Burien City Council adopted Ordinance No. 818, which established an "Anti-Camping or Anti-Dwelling Ordinance." *See* attached Exhibit C. The ordinance was adopted with full notice and represented that:

> this anti-camping ordinance complies with the *Martin v. Boise* and *Johnson v. Grants Pass* Ninth Circuit decisions in that *it does not criminalize people resting, sleeping, or lying down on public property if there are no shelter beds or spaces available*, rather it sets a reasonable time, and it authorizes the City Manager to set reasonable place and manner restrictions on resting, sleeping, or lying down on public property.

(Emphasis added).

29. On October 2, 2023, the language in Ordinance No. 818 was amended by Ordinance No. 827. A copy of Ordinance 827 is attached as Exhibit D.

30. There are several key features of Ordinance No. 827, which was codified at BMC 9.85.150. First, it established a misdemeanor offense for using "nonresidential property . . . as a temporary or permanent dwelling, lodging, residence, or living accommodation." Ord. No. 827 §1(A). The term "nonresidential property "essentially included all public property in Burien except for public housing. *Id.* §1(B).

31. Second, under Ordinance No. 827, the prohibition against the use of "nonresidential property" applied only between the hours of 7:00 p.m. and 6:00 a.m. *Id.* §1(A).

32. Third, the City Manager was authorized to designate nonresidential areas where use is prohibited. *Id.* The City Manager never acted under this provision. *Id.*

33. Finally, contrary to these detailed exceptions, the ordinance then broadly provided that "[c]amping, dwelling, lodging, *residing, or living* on nonresidential public property shall not be permitted in Burien except during the times stated immediately above." *Id.* (emphasis added). The ordinance appeared to define a person to be "camping" merely by possessing items associated with

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 8
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

camping. *Id.* §1(C) ("Indicia of camping include, but are not limited to, bedding, cots, sleeping bags, tents or other temporary shelters, personal belongings storage, and cooking equipment use or storage.").

34.     At least for "public camping," Ordinance No. 827 stated that "A person is not guilty of unlawful public camping if there is no available overnight shelter when the person is on public property. " *Id.* §1(E).  Available overnight shelter "means a public or private shelter with available overnight space, open to individuals experiencing homelessness at no charge." *Id.*  If "the person cannot utilize an available overnight shelter due to voluntary actions such as intoxication, drug use, unruly or assaultive behavior, or violation of shelter rules, the overnight shelter space shall still be considered available for this section." *Id.*

35.     Burien delayed the effective date of Ordinance No. 827 until November 1, 2023. *Id.* §7 ("Given the sensitivity of this matter, the significance and impact of the unhoused, and the need to educate and inform the public, including the unhoused, this section will take effect on November 1, 2023.").

36.     In implementing this ordinance, Burien relied on REACH, a social service agency that had been assisting KCSO with outreach and providing services to unhoused persons in Burien.  On December 1, 2024, Burien determined to use the new ordinance to clear the triangle lot encampment. KCSO and REACH coordinated to connect homeless persons with services providers and voluntarily move them from the site.  KCSO made no arrests.  KCSO and REACH coordinated to connect homeless persons with services providers and voluntarily move from the sites where unhoused persons were continually contacted and directed to move.

37.     In the Spring of 2023, Burien began a series of actions that resulted in the movement of unhoused people camping in Burien public spaces.  First, the site shared by the KCLS Library in

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 9
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

Burien and the Burien City Hall was cleared, and most people relocated to a vacant city lot a short distance away. Burien leased the lot for use as a dog park, and people were cleared from this location as well. Most campers moved to another location but were relocated again. The majority of the people then moved to a section of city right of way on SW 152nd Street, near the Grocery Outlet Store. Private businesses hired an outreach consultant and they relocated the people from that location. Rocks were placed along SW 152nd Street to prevent unhoused from using the location again. The people then moved to a private lot near SW 120nd Street and Ambaum Boulevard SW. The private property owner requested their removal after several weeks. When removed from that location, the people moved to a nearby section of right of way on Ambaum Boulevard SW, a triangle shaped section of public land in the middle of the roadway.

38. Instead, a local church in Burien, the Oasis Home Church, determined to open its parking lot to camping by unhoused persons. Many unhoused persons who were cleared from the triangle lot encampment joined the church encampment. Although Burien continued in its refusal to designate authorized camping sites, Burien was also not satisfied with the church location. Burien claimed that the Oasis Church was in violation of city zoning codes, which do not allow encampments. In City Council meetings and through letters from the City Attorney's office, Burien claimed that the location endangered public health and safety. It required the closure of the camp within 90 days.

39. Eventually, the church succumbed to Burien's pressure and closed the church encampment in early 2024. At this point, several of the unhoused people relocated back downtown near the Burien City Hall. Thus, Burien's actions on homelessness succeeded only in shuffling unhoused people from City Hall to the dog park lot to the triangle encampment to the church and then back again to City Hall, while never offering them any authorized camping location under Ordinance

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 10
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

No. 827.

40. In late February 2024, KCSO contract Police Chief for Burien, Ted Boe, was provided with a draft version of an updated ordinance, but was advised by Burien it was privileged and that it could not be shared with King County at that time. Chief Boe provided the City Manager with his ideas for operational plan on the privileged ordinance draft and expressed his concerns with Burien's proposed plans. On February 26, 2024, Chief Boe was provided a copy of a map marked as a draft and was allowed to share the map, but not Burien's yet undisclosed and revised public camping ordinance. As of February 27, 2024, King County expected that the updated camping ordinance would be set for the March 18, 2024, council meeting. However, King County learned that the camping ordinance had suddenly been declared an emergency in the late afternoon on March 1, 2024, and was set for the March 4, 2024, council meeting. King County learned of the "emergency" ordinance not from Burien officials, but from the Burien web on March 1, 2024.

41. Late in the evening on Monday, March 4, 2024, the Burien City Council adopted Ordinance No. 832 further amending its Unlawful Public Camping ordinance. *See* attached Exhibit E. This ordinance was not placed on the Council's Agenda until late Friday afternoon on March 1, 2024, thereby providing the bare notice required under RCW 42.30.077. Contrary to its prior ordinances involving police services and the homeless, Burien made no effort to engage in discussions with King County regarding concerns and did not provide notice of consideration of the Ordinance No. 832 by the Burien City Council being accelerated from March 18 to March 4 on the legislative calendar. The City Council passed Ordinance No. 832 on an emergency basis, thereby making it effective immediately upon adoption.

42. Ordinance No. 832 starts out with three pages of recitals claiming without support that crime is increasing in Burien and homeless persons are to blame. *See* Exhibit E, at p. 1 ("the Burien

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 11
[No: 2:24-cv-325]

**Leesa Manio**n (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

community has vociferously asserted that the significant increase in unhoused individuals has resulted in an incredible increase in crime and public indecency, and has made the use of libraries, sidewalks, and other public places uninviting if not dangerous"). The recitals elevate innuendo and rumor into reasons for emergency legislation without ever endorsing the truth of the recounted claims. *Id.* ("Burien store employers and employees have advised the Burien City Council that some unhoused individuals enter their stores, take what they want, and exit without paying"); (Burien residents "have seen young girls dropped off at an encampment and taken into tents"). Unlike the original Ordinance No. 818, current Ordinance No. 832 makes no pretense about complying with binding Ninth Circuit published cases, but explains Burien's belief that other legal precedent supports Burien's extreme position. *Id.* at p. 2-3.

43. In the agenda materials related to Ordinance No. 832, Burien states that its purpose is to "clarify" the prior ordinance and "enhance its effectiveness." *See* attached Exhibit F, at p. 1. Indeed, Ordinance No. 832 goes well beyond the approach of prior Ordinances Nos. 818 and 827.

44. Whereas Ordinance No. 827 established a criminal offense related to camping, current Ordinance No. 832 makes it a misdemeanor for the unhoused to utilize public property as vaguely defined "living space" in Burien. Under Section One(1)(a), "[i]t shall be unlawful to use nonresidential public property *as living space in Burien at all hours*." Exhibit E (emphasis added). There is no violation under Ordinance No. 832 "if there is no available overnight shelter," but only if "a person is camping in a non-prohibited location." *Id.* at §1(1)(b). Even then, the exception applies only "to the use of nonresidential public property as a living space" between the hours of 7:00 p.m. and 6:00 a.m. the following morning.

45. The full meaning of Ordinance 832 is hidden in its definitions. Although the meaning is not entirely clear, "nonresidential public property as a living space" means "to camp, dwell, lodge,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 12
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

reside, sleep, or exercise nontransitory exclusive control over any portion of nonresidential public property." Exhibit E, at p. 4, §1(2)(a). Even in the limited Burien locations where an unhoused person can engage in "living space" activities between the hours of 7:00 p.m. and 6:00 a.m. (due to the unavailable of shelter space), it remains a crime to engage in "living space" activities at those locations between 6:00 a.m. to 7:00 p.m. Thus, during the day a person cannot "camp," "dwell," "reside," "sleep," or "exercise nontransitory exclusive control" over public property in Burien without committing a crime. "Nontransitory" is not defined. The ordinance instructs that the possession of bedding, a sleeping bag, or "personal belongings storage," constitutes "indicia of camping." Thus, a person resting on *any* public property anywhere in Burien from 6:00 a.m. to 7 p.m. while in possession of either a sleeping bag or a backpack is engaged in criminal activity pursuant to Ordinance No. 832.

46. But it is important to note that unhoused individuals are completely barred from engaging in "living space" activities at "prohibited" locations within Burien and that no exceptions apply to these locations. Under subsection 3 of Ordinance No. 832, the City Manager is authorized "to prohibit the use of one or more locations or areas of Burien as nonresidential public property as a living space." *Id.* at p. 4, §1(3). Although it has the force of law in establishing a crime, the "City Manager's map" is uncodified and can be amended as needed by the City Manager without notice. There is no provision for publication of the map. The ordinance contains *no exception* to the prohibition on "living space" activities in prohibited areas, including those related to time or the unavailability of shelter space that apply in "non-prohibited" areas. *Id.* In essence, Ordinance No. 832 establishes uncodified exclusion zones for unhoused persons where it is a *criminal offense* for the homeless to engage in any "living space" activities within those areas at any time.

47. Because Ordinance No. 832 grants unfettered discretion to the City Manager to establish these exclusion zones, the City Manager can opt to change them at any time without any

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 13
[No: 2:24-cv-325]

Leesa Manion (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

notice or publication requirements. *See* Exhibit F, at p. 1 (pointing out that the map of prohibited locations for unhoused persons is not codified as part of the ordinance "so that it can be amended as needed."). Burien has posted no signs identifying the exclusion zones, nor has it ever directly designated or posted notices identifying areas where the homeless are permitted to engage in "living space" activities.

48. The agenda materials for Ordinance No. 832 include the City Manager's current uncodified "Prohibited Camping Areas" map, which excludes the unhoused from engaging in "living space" activities in over 80% of the Burien. The map establishes exclusion zones within 500 feet of schools, daycares, Burien parks, non-Burien parks and libraries (which "protects" the downtown condos). Further, the map establishes exclusion zones that include Burien's critical areas plus an additional 500-foot buffer. The end result is that the unhoused are largely precluded from engaging in "living space" activities within Burien city limits. *See* Exhibit F, at p. 3.

49. When KCSO reviewed Ordinance No. 832, the broad prohibition on vaguely defined "living space" activities, the establishment of uncodified exclusion zones for the unhoused, and other provisions raised serious concerns about the constitutionality of the ordinance. Burien is currently being sued in the Washington Superior Court by the Seattle/King County Coalition on Homeless, which challenged the constitutionality of Ordinance No. 827. *See Seattle King County Coalition on Homelessness et al. v. City of Burien,* King Cnty. Sup. Ct. No. 24-2-00127-1 KNT. The constitutional concerns raised in that suit are far exceeded by Burien's new prohibition on "living space" activities and the City Manager's implementation of changeable uncodified exclusion zones. In addition, KCSO learned on March 8, 2024, that Burien had opted to cancel its contract with REACH, thereby removing the only remaining city contractor that had assisted KCSO with shelter space in order to comply with Ninth Circuit precedent.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 14
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

50. On the morning of March 8, 2024, after considering the ordinance, Sheriff Cole-Tindall announced that constitutional questions surrounding Ordinance No. 832 were sufficiently serious to warrant suspending enforcement. She informed her Deputies that:

> We have strong concerns on whether the terms of this ordinance are constitutional, based on the existing legal authority. There is already a lawsuit pending that challenges the constitutionality of the Ordinance enacted before the publication of the map which now has the effect of excluding public camping from most of the non-residential public property in Burien. I do not want any of you to find yourself in a situation where you are asked or expected to do something that could violate legally established rights. *I am directing you that we will not enforce this particular section of the Burien Municipal Code (BMC 9.85.150), until the constitutionality of the public camping ordinance is resolved.*
>
> All criminal code violations, except for the public camping ordinance, should continue to be enforced as you go about your duties.

(Emphasis added).

51. The Burien City Manager reacted strongly to the Sheriff's directive to KCSO deputies. In an email sent to the Sheriff on Friday morning, March 9, 2024, he claimed that King County was in breach of the ILA as a result of the directive not to enforce Ordinance No. 832 pending resolution of constitutional concerns. He stated that he would bring the matter before the ILA oversight committee. He further threatened to "withhold payment for services due to KCSO's egregious violation" of the ILA.

52. The Sheriff informed the City Manager of why she felt it was necessary to suspend enforcement of the ordinance:

> King County is reviewing the homeless camping ordinance that was passed by Burien City Council this week to determine how to manage the next steps from a law enforcement perspective. We have substantial concerns that Burien's new ordinance violates binding federal case law. Because Burien adopted its ordinance on a highly accelerated timeline, there was no opportunity to address the serious constitutional issues raised by this ordinance. At this time, the King County Sheriff's office will not enforce on the public camping portion of Burien Municipal Code (BMC 9.85.150), until the constitutionality of the ordinance is resolved. All criminal code violations will continue to be enforced. We expect to have completed an analysis of the legislation early next

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 15
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

week and will provide an update to Burien at that time.

53. In another Friday email, Burien Mayor Schilling also questioned KCSO's decision to suspend enforcement of recently adopted Ordinance No. 832. Despite the substantial amendments to Ordinance No. 827, the Mayor somehow believed that "[t]here's no substantive change, this is just an amendment." He questioned the authority of KCSO to determine questions of constitutionality and stated, "I thought that's for judges to decide."

54. Sheriff Cole-Tindall replied that the "content of the new ordinance, in conjunction with the map of all the areas where camping is prohibited, is a substantial change, from the County's perspective." She pointed out the hazards of enforcing an unconstitutional ordinance: "Regarding enforcement of the current ordinance, it is my understanding that you expect the KCSO to criminally trespass anyone who Burien contends is violating the terms of the new camping ordinance. That would put this agency in the position of criminalizing homelessness, which we decline to do." The Sheriff was unwilling "to allow Burien's ordinance to dictate operational decisions that have significant legal implications."

55. After the Sheriff persisted in her determination not to enforce Ordinance No. 832 due to constitutional concerns, Burien acted on its threat to withhold ILA payments and directed Burien's financial staff to "place a hold on any invoices received from the King County Sheriff's Office until further notice." This action came in direct response to the City Manager's directive "not process any invoices from the King County Sheriff's Office" and not to "issue any payment to the King County Sheriff's Office."

56. Sheriff Cole-Tindall and King County are filing this action to resolve the constitutionality of Ordinance No. 832 and the question of whether KCSO breached the ILA by refusing to enforce an unconstitutional ordinance pending this court action.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 16
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

57. This case presents an actual controversy pursuant to 22 U.S.C. Sec. 2201(a).

## V.  FIRST CAUSE OF ACTION
**Declaratory Judgment Regarding Federal Constitutional Law and Whether Ordinance No. 832 Violates the U.S. Constitution**

58. Sheriff Cole-Tindall and King County re-allege and incorporate by reference the allegations contained in the previous paragraphs.

59. A declaratory judgment is proper pursuant to 28 U.S.C. §§ 2201 and 2202 because an actual and justiciable controversy exists among the parties as to their respective rights and obligations under federal law, namely whether Ordinance No. 832 violates the Eighth Amendment, the Fourteenth Amendment and other provisions of the United State Constitution on its face.

## VI.  SECOND CAUSE OF ACTION
**Declaratory Judgment Regarding Whether It is a Breach of the ILA for the Sheriff to Suspend Enforcement of an Ordinance Pending A Court Determination When The Ordinance Appears to Be Facially Unconstitutional Based on Binding Judicial Authority.**

60. King County re-alleges and incorporates by reference the allegations contained in the previous paragraphs.

61. A declaratory judgment is proper pursuant to 28 U.S.C. §§ 2201 and 2202 because an actual and justiciable controversy exists among the parties as to their respective rights and obligations under federal and Washington law, namely whether it is a breach of the ILA for the Sheriff to suspend enforcement of a facially unconstitutional ordinance.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Sheriff Cole-Tindall and King County pray for the following relief:

A. For declaratory relief that Ordinance No. 832 violates the Eighth Amendment, the Fourteenth Amendment, and other provisions of United States Constitution;

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 17
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191

B.  For declaratory relief that King County did not breach the ILA when the Sheriff determined to suspend enforcement of Ordinance No. 832, pending a final court determination of the constitutionality of the ordinance;

C.  For injunctive relief precluding Burien from requiring the enforcement of Ordinance No. 832 or engaging in punitive measures based on KCSO's refusal to enforce Ordinance No. 832;

D.  For Plaintiff's costs and attorneys' fees herein; and

E.  For such other relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED.

DATED this 11th day of March, 2024.

LEESA MANION (she/her)
King County Prosecuting Attorney

By: _____
ANN M. SUMMERS, WSBA #21509
ERIN OVERBEY, WSBA #21907
Senior Deputy Prosecuting Attorneys
Attorneys for Plaintiff
701 Fifth Avenue, Suite 600
Seattle, WA 98104
Tel: (206) 477-1120 / Fax: (206) 296-0191
ann.summers@kingcounty.gov
eroverbey@kingcounty.gov

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF - 18
[No: 2:24-cv-325]

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120 / Fax (206) 296-0191