# Exhibit B



**Dow Constantine**
King County Executive

401 Fifth Avenue, Suite 800
Seattle, WA  98104

**206-296-9600**   Fax 206-296-0194
TTY Relay: 711
www.kingcounty.gov

May 19, 2023

Adolfo Bailon
City Manager
City of Burien
400 SW 152 St, Suite 300
Burien, WA 98166

Dear City Manager Bailon and Council Members for the City of Burien:

I am writing to express King County's substantial concerns with the City of Burien's plan to orchestrate the eviction of unhoused people currently camping on parcel number 1923049254 (hereafter referred to as the "City Lot"), which is located on the Northwest corner of SW 152 ST and 6 AVE SW, Burien, WA.  The County urges the City to reconsider its planned approach to this situation.

The City Lot has been recently used as an informal dog park open to the public.  Many of the persons living on the City Lot were relocated from an encampment adjacent to the Burien Library and City Hall less than two months ago.  Although the City currently owns the City Lot, it has not identified housing alternatives for the persons who live there despite constitutional duties imposed on the City under federal law.  Instead, the City is attempting to circumvent those duties by entering a lease with a private party, who will maintain and continue the use of the City Lot as a public dog park while attempting to use criminal trespass to force unhoused persons from the premises.

The County does not believe that this lease arrangement can be used to avoid the City's constitutional duties to unhoused persons.  As a result, until the City has identified alternative housing arrangements for persons who are camping at the City Lot location, the King County Sheriff's Office ("KCSO") cannot be part of any effort to relocate these unhoused persons, or to sanction them for staying at the City Lot location.  Above all else, the KCSO must police our communities in a compassionate and constitutional manner that complies with applicable law.

**Burien's Relocation of Unhoused Persons from the Public Area Near the Library to the City Lot.**

The KCSO has been working on issues relating to public camping in Burien for many months.  A significant encampment was located in the public area shared by City Hall and the Burien

EXHIBIT B -- Page 1

Branch of the King County Library System ("KCLS").[1]  Initially, camping was not prohibited in this area.  However, in February 2023, the City and KCLS changed the rules governing the public area to prohibit camping.

The KCSO participated in planning discussions with the City and KCLS to prepare for displacement of campers. From the KCSO's perspective, the plan included providing notice to the campers and outreach to assist them in finding alternate housing. Chief Ted Boe worked with multiple agencies and City officials with a focus on locating alternate housing so that every displaced person would be offered a new housing location by the date that the encampment was removed. As the planned removal date neared, he expressed his concern to the City Manager about the lack of alternative housing and identified several locations where campers were likely to go, including the City Lot.

On March 30, 2023, Council Member Moore and Planning Commission Board Chair Schafer informed campers near the Burien Library about the vacant City Lot.  They advised campers that the property was unused, not currently slated for development, and not an official park. Campers at this location would thus be immune from forced removal, unless the City could find alternative housing or camping locations.  As a result of these representations, some campers agreed to move voluntarily, and City representatives assisted them in moving their belongings to the new location. The next day, other campers followed.  Although the City later issued a statement that city officials were acting as private citizens, and not in their official capacities, when they assisted the unhoused campers, it is not apparent that this distinction was clear to unhoused campers at the time of their relocation.  In short, the campers voluntarily relocated to the City Lot based on representations and actions from members of City's Council and Planning Commission.

On March 31, 2023, the remaining people living in temporary structures near the Burien Library also relocated to the City Lot. Local charitable and social services agencies were there to assist, but none could offer housing. Long before March 31, the KCSO, through Chief Boe, collaborated with other community partners and County agencies to plan for the removal and seek alternative housing. There were attempts to get housing support from both the Regional Homeless Authority and King County Health through Housing. Additionally, the Executive's Office began a search for suitable alternatives within the City and continues to do so.  Until the City's leasing plan arose, it was the County's belief that people camping on the City Lot would continue to reside there pending the search for suitable alternative housing.

**Planned Eviction of Unhoused Persons from the City Lot Through the Lease Scheme.**

On May 19, 2023, King County representatives had the opportunity to meet with the City Manager, Adolfo Bailon and Mayor Sofia Aragon, along with City Legal Counsel, Garmon Newsom. We discussed the City's plans for the City Lot, which include a plan to lease the location to a non-profit entity that will continue to use the City Lot as a dog park and adjacent parking lot, which will remain open to the public. At this date, there are at least two dozen people residing on the City Lot, many of whom were relocated from the encampment on the

---

[1] KCLS is a special use district separate from King County.

public area adjacent to the Burien Library.  Last week, the Sheriff learned of plans to eject campers on the City Lot, following execution of a lease by the City to a third party. A preliminary, unsigned, copy of the lease proposes a lease to Community Animal Resource & Education Society, a non-profit organization, because of a "need for the parcel to revert back to its most recent use by the community as a dog recreation and relief area". The lease area covers the premises where campers currently reside.

During the May 19, 2023, discussions, City officials were transparent that they expect the new lessee of the public dog park to eject any campers from the City Lot.  Because the City contends that the City Lot would be considered private property under the lease (despite its mandated public use and actual public ownership), City officials believed that the Burien Police Department (which is entirely comprised of KCSO personnel) could force campers to leave the premises by issuing a criminal trespass citation, and potentially forcing the person to leave.

The City officials believed that leasing the City Lot to a private party relieved them of any obligation to identify alternative housing, or a new location on city property for unhoused campers.  As a result, it is our understanding that the City has not found a location for housing those who would be ejected from the City Lot.  Although the City is able to identify locations where unhoused campers cannot reside, the City has been unwilling to designate areas where unhoused persons could go upon their removal from the City Lot.  During a second call with City officials on May 19, 2023, Counsel for the County Executive and Sheriff's Office, encouraged the City to develop some plan to assist campers on the City lot to find alternative housing, or identified alternative camping locations.

**Because Federal Law Requires the City to Identify Alternative Housing and the Lease Arrangement Cannot Be Used to Evade this Constitutional Requirement, the KCSO Cannot Participate in the Relocation of Unhoused Persons From the City Lot.**

Because the City's plan to relocate unhoused campers off the City Lot without offering alternative housing violates the Constitution, KCSO personnel cannot participate in this effort. The County's True North Values also do not include forcibly ejecting homeless people who have no other housing available to them.  In accord with federal law, the County's approach is to offer resources and direct campers to available housing. Sometimes people utilize alternate shelter housing and sometimes they move their campsite to a new location, but they cannot be subject to criminal penalties if they have nowhere else to go. The KCSO cannot cite anyone from this lot for criminal trespass, under these circumstances. The County is aware that it can be time consuming and frustrating to seek out other options, but that does not change the County's commitment to looking for a more humane approach to homelessness.

Under the circumstances outlined by City officials, the KCSO cannot participate in any plan to assist in the ejection of campers from the City lot.  The federal case law prohibiting the use of police to effectively criminalize homelessness is clear.  In response to a growing homeless population, the City of Boise enacted an ordinance that made it a misdemeanor to use its streets, sidewalks, parks, or public places as a camping place. Homeless individuals convicted of violating the ordinance challenged the constitutionality of the ordinance.  The Ninth Circuit agreed, holding that "the Eighth Amendment prohibits the imposition of criminal penalties for

sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." *Martin v. City of Boise*, 920 F.3d 584, 618 (9th Cir. 2019). The Ninth Circuit held "as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter". *Id.* at 617.

More recently, the City of Grants Pass attempted to circumvent the ruling in the *Boise* case by passing anti-camping ordinances that only resulted in civil penalties for initial violations. Unauthorized campers could be issued an exclusion order from a City park, but if the person returned to a City park, they could be prosecuted for criminal trespass. The City argued that, because the penalties were civil, rather than criminal, the *Martin* ruling did apply. The Ninth Circuit disagreed: "The holding in *Martin* cannot be so easily evaded". *Johnson v. City of Grants Pass*, 50 F.4th 787, 807 (9th Cir. 2022). The critical failing in the Grants Pass approach to homelessness was the use of civil citations issued for behavior the homeless could not avoid, followed by a civil park exclusion order and, eventually, prosecutions for criminal trespass. "Imposing a few extra steps before criminalizing the very acts *Martin* explicitly says cannot be criminalized does not cure the anti-camping ordinances' Eighth Amendment infirmity". *Johnson v. City of Grants Pass*, 50 F.4th 808.

The plan articulated by the City of Burien fails to meet the obligations identified in the *Boise* and *Grants Pass* decisions. Although no case has yet addressed the use of a lease to avoid a municipality's constitutional obligations, this approach is highly likely to meet with the same skepticism of the *Grants Pass* attempt to evade the holding in *Martin*. As is clear from the *Boise* analysis, a city has a constitutional obligation to offer suitable, available shelter space before utilizing police to eject homeless persons from public land. A lease that merely transfers technical control of a public space to a private party – explicitly to avoid constitutional obligations to unhoused persons – cannot possibly relieve a municipality of its constitutional obligations.

The City Lot location is, and remains, a public facility even though the City is allowing a private entity to maintain the location as the City's lessee. The City has plainly expressed its expectation that the lessee will indeed eject the campers from the City Lot and do so without any attempt to help with relocation to available housing for displaced persons. The City's position that it has no obligation to offer such service once it signs a lease is troubling. King County cannot agree with this position.

The City can take any steps it chooses to take with its own land, but if it follows its current plan for the City Lot, it will be acting on its own. The City should not expect that KCSO will exercise its police powers to eject anyone from the City Lot. In fact, given the decision to disregard the guidance identified above, the KCSO is unwilling to participate in planning an event intended to violate clearly established law. If the KCSO were to conduct itself in the same manner as the Grants Pass police department, it is a certainty that the County will be in the position of defending a civil rights lawsuit. Given the current state of federal law in this Circuit, there is a reasonable expectation of punitive damages arising from the City's proposed approach. The County will not put its law enforcement personnel in this untenable legal position.

As commissioned law enforcement, the KCSO has an unquestionable responsibility to uphold the constitution.  In addition, the ILA reserves such policy and policing procedural decisions for the County. According to paragraph 5.1 and Exhibit C to the ILA with the City of Burien, policies and procedures used in providing law enforcement services are clearly within the County's purview.  This includes policy decisions on when it is appropriate and constitutional to eject a homeless camper from a public place.  This is in keeping with the County's ownership of liability for the actions of its law enforcement personnel. Whenever police powers are used by the KCSO in its contracted policing of the City, it is the County who bears all liability for its personnel and therefore retains the sole authority on the appropriate policies and procedures in its police work.

For all the foregoing reasons, the County requests that the City of Burien focus on working with the County to find a solution to identify alternative housing for unhoused campers rather than potentially criminalizing homelessness in Burien.


Sincerely,

David J. Hackett
General Counsel to King County Executive


cc:     April Putney, Chief of Staff
        Karan Gill, Deputy Chief of Staff
        Patricia Cole-Tindall, Sheriff
        Jesse Anderson, Undersheriff
        Leesa Manion, King County Prosecutor
        Erin Overbey, General Counsel for KCSO