# Exhibit F



# Agenda Bill

## City Council Regular Meeting - 04 Mar 2024

| Department | Staff Contact |
|---|---|
| Legal | Garmon Newsom II, City Attorney |

**Agenda Placement**

Business Agenda

**Agenda Bill Title**

Discussion of Ordinance No. 832, Amending BMC 9.85.150

**Summary**

BMC 9.85.150 is Burien's anti-camping ordinance.  While camping is not permitted on public property, there is an exception for unhoused individuals when there are no beds, shelters, facilities, or otherwise available.  Due to misunderstandings and misinterpretations of BMC 9.85.150, Burien now amends the ordinance to clarify further and enhance its effectiveness.  Additionally, the recitals explain why the council requested this ordinance.  The exception to the anticamping ordinance continues to be between 7:00 p.m. and 6:00 a.m. the following morning.

In addition, as a supplement to this ordinance, but not codified so that it can be amended as needed to ensure an appropriate amount of space for the unhoused and adequate protection from criminal conduct in or near unhoused encampments, please see the City Manager's map.  The map reflects the areas protected from unhoused encampments - schools, daycare centers, libraries, parks, and critical areas.  At this time, the protected distance is 500 feet.

**Options**

1. Adopt Ordinance 832, Amending BMC 9.85.150.
2. Do not adopt Ordinance 832, Amending BMC 9.85.150.

**Administrative Recommendation**

Adopt Ordinance No. 832, Amending BMC 9.85.150.

**Suggested Motion**

I move to adopt this motion as an emergency ordinance to protect the public health, safety, and peace of the community.

**Fiscal Impact**

None at this time.

**Attachments**

[Prohibited Camping Area Map - 500ft buffer](#)
[Draft Ordinance No. 832 - Amending BMC 9.85.150](#)



# CITY OF BURIEN, WASHINGTON

## ORDINANCE NO. 832

_____

**AN ORDINANCE OF THE CITY OF BURIEN, WASHINGTON, AMENDING AND CLARIFYING BMC 9.85.150, ENTITLED UNLAWFUL PUBLIC CAMPING, PROVIDING FOR SEVERABILITY, AND ESTABLISHING AN EFFECTIVE DATE.**

_____

**WHEREAS**, for many years the City of Burien has had unhoused individuals living, sleeping, and resting on Burien's public property if they did not obstruct pedestrian or vehicular traffic;

**WHEREAS**, in 2007, based on a need to control and protect some of Burien's park property, Burien enacted BMC 7.30.110, which prohibited camping "in any park area including any park parking lot, and BMC 7.30.120 that prohibited the unauthorized erection, maintenance, use, or occupancy of "a temporary tent or shelter in any park area" subject to some exceptions;

**WHEREAS**, in recent years, the number of unhoused persons in Burien has dramatically increased despite Burien being one of the more affordable communities in King County;

**WHEREAS**, the Burien community has vociferously asserted that the significant increase in unhoused individuals has resulted in an incredible increase in crime and public indecency, and has made the use of libraries, sidewalks, and other public places uninviting if not dangerous;

**WHEREAS**, according to law enforcement, their crime tracking data confirms a significant increase in crime in and near unhoused encampments;

**WHEREAS**, within the last six months, there has been a murder and allegations of sex trafficking, sexual assaults, drug use, thefts, and trespasses in or near unhoused encampments;

**WHEREAS**, Burien store employers and employees have advised the Burien City Council that some unhoused individuals enter their stores, take what they want, and exit without paying;

**WHEREAS**, Burien residents and businesses have sent many letters and emails, and regularly complained during council meetings that
1. They were not able to enter the Burien City Hall/King County Library building because of unhoused individuals and their tents, carts, and personal property;
2. They were unable to enter businesses as employers, employees, or patrons because of unhoused individuals blocking doorways and sidewalks;
3. They have watched unhoused individuals ingest what appeared to be controlled substances in tin foils;
4. They have watched unhoused individuals defecate and urinate in front of very young children and their parents;

5. They have seen young girls dropped off at an encampment and taken into tents;
6. They have had an unhoused individual blow unidentified smoke into their faces;
7. They have watched what appear to be hand-to-hand transactions that are believed to be drug sales;
8. They have watched what are believed to be drug dealers set up tents and make transactions with those who approach the tents; and
9. They have had unhoused individuals accost and threaten them or others and engage in behavior that would be unacceptable in other cities;

WHEREAS, even Burien municipal employees have called for law enforcement's assistance to enter the Burien City Hall safely as unhoused persons blocked doorways and steps;

WHEREAS, around the library/city hall, unhoused individuals have had open fires around the library, one of which resulted in a person sustaining burns that required hospitalization;

WHEREAS, during council meetings, Burien staff have watched an apparently unhoused person defecate immediately outside a council chamber window, smelled what is believed to be the odor of an illicit substance, had doorways blocked, and even had a council member forced to leave a meeting because of the strong smell of marijuana or some other substance;

WHEREAS, in response to the dramatic increase in unhoused individuals in Burien and, more specifically, crimes in and near unhoused encampments, the Burien community, including business owners and residents, has demanded that the Burien City Council and law enforcement address this significant increase in crime;

WHEREAS, in response to the preceding information, on September 25, 2023, Burien adopted an anticamping ordinance, Ordinance 818, prohibiting camping on Burien's nonresidential public property, and amended BMC 9.85.150 with Ordinance 827 on October 2, 2023;

WHEREAS, Burien's anticamping ordinance regulates conduct, not status;

WHEREAS, according to the United States Supreme Court, there is no fundamental right to housing, *Lindsey v. Normet*, 405 U.S. 56, 74 (1972), and no obligation to provide adequate housing. *Deshaney v Winnebago County Dept of Social Services*, 489 U.S. 189, 259 (1989);

WHEREAS, the Ninth Circuit in *Martin v. Boise* professed that its holding was narrow and that it was not dictating that cities "must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets . . . at any time and at any place." *Martin v. Boise, 902 F.3d 1031, 1048* (2018);

WHEREAS, for more than half a century the United States Supreme Court has recognized that a municipality has the right "to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use." *Cox v. Louisiana*, 379 U.S. 536, 554 (1965);

Page 2 of 5

**WHEREAS**, Washington Constitution, Article XI, Section 11, states "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws, known as "municipal police power;"

**WHEREAS**, the United States Supreme Court has stated the municipality's "'right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.'" While stated in the context of regulating dangerous drugs in *Robinson v. California*, the logic and extent of municipal police powers are, as described in that case wide, "and the wisdom of any particular choice within the allowable spectrum is not for us to decide." *Robinson v. California*, 370 U.S. 660 (1962);

**WHEREAS**, even the Ninth Circuit, in its *Johnson v. Grants Pass* decision, now before the United States Supreme Court as *Grants Pass v. Johnson*, warned that its holding in "*Martin* is not to be interpreted to hold that the anti-camping ordinances were properly enjoined in their entirety … nor does it prohibit the City from attempting other solutions to the homelessness issue." *Johnson v. Grant's Pass*, 72 F.4th 868, 895 (2023);

**WHEREAS**, the United States Supreme Court, after surmising "If the Government has a legitimate interest in ensuring that the National Parks are adequately protected, which we think it has, and if the parks would be more exposed to harm without the sleeping prohibition than with it, the ban is safe from invalidation…" added that it has "difficulty, therefore, in understanding why the prohibition against camping, with its ban on sleeping overnight, is not a reasonable time, place, or manner regulation that withstands constitutional scrutiny." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 297 (1984);

**WHEREAS**, Burien's efforts in reviewing and considering the existing laws are intended to guide its approach and ensure that Burien complies with those laws as it balances the broader community's interests and the interests of the unhoused;

**WHEREAS**, since there continue to be misunderstandings or misinterpretations of BMC 9.85.150, Burien makes the following amendments to BMC 9.85.150 to clarify and enhance its efforts to protect Burien residents, businesses, and property and to assist and provide clear guidance for the unhoused; and

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF BURIEN, WASHINGTON, DO ORDAIN AS FOLLOWS**:

**Section One**. Section 9.85.150, entitled **Unlawful Public Camping**, of the Burien Municipal Code, is repealed and replaced as follows.

(1) <u>Prohibition and Evening-Night Exception:</u>
    a. <u>Prohibition. It shall be unlawful to use nonresidential public property as a living</u>

      space in Burien at all hours.
- b. Exception. The prohibition shall not apply if there is no available overnight shelter, as defined in subsection (2)d, and only if a person is camping in a non-prohibited location.  This exception permitting the use of nonresidential public property as a living space only applies between 7:00 p.m. and 6:00 a.m. the following morning.  This exception is not a defense to other law violations.

(2) Definitions:
- a. "Nonresidential public property as a living space" means to camp, dwell, lodge, reside, sleep, or exercise nontransitory exclusive control over any portion of nonresidential public property.
- b. "Nonresidential public property" means any Burien park, street, sidewalk, or any other open area where Burien or another governmental agency has a property interest, including easements. "Nonresidential public property" does not include apartments, houses, other fixed residential living quarters owned or leased by Burien or King County, or locations explicitly excluded from this definition by the City Manager or City Council.
- c. Indicia of camping include but are not limited to, bedding, cots, sleeping bags, tents or other temporary shelters, personal belongings storage, and cooking equipment use or storage.
- d. "Available overnight shelter" means:
    - a. Overnight public or private shelter or space to accommodate a person,
    - b. Available or open, and
    - c. At no charge or expense to that person.

(3) After considering the public health, safety, environmental impacts, and the availability of space for the unhoused and related concerns, the City Manager may prohibit the use of one or more locations or areas of Burien as nonresidential public property as a living space.  This authority is in addition to the emergency authority provided under BMC Chapter 2.75 and any other applicable laws, orders, rules, or guidance.

(4) This ordinance does not restrict or limit Burien's ability to enforce its police, health, safety, and environmental laws under Washington State Constitution Article XI, Section 11, or any other applicable law, order, rules, or guidance.

(5) Unlawful public camping is a misdemeanor and may be subject to a criminal deferral.

    **Section Two**.  Severability.  Should a court of competent jurisdiction find any section, paragraph, sentence, clause, or phrase of this ordinance, or its application to any person or circumstance, unconstitutional or otherwise invalid for any reason, or should any portion of this ordinance be pre-empted by state or federal law or regulation, such decision or pre-emption

shall not affect the validity of the remaining parts of this ordinance or its application to other persons or circumstances.

**Section Three**. <u>Edits</u>.  For this ordinance, additions are underlined, and deletions are stricken with brackets around the deleted language.

**Section Four**. <u>Corrections</u>.  The City Clerk and codifiers of the ordinance are authorized to make necessary corrections to this ordinance, including, but not limited to, the correction of scrivener/clerical errors, references, ordinance numbering, section/subsection numbers, and any references thereto.

**Section Five**. <u>Effective Date</u>.  <u>Emergency Ordinance</u>. This ordinance was adopted by at least a majority plus one of the entire council to protect the public health, safety, and peace of the community and shall take effect immediately upon adoption to improve the understanding of this ordinance and when and how enforcement may be required.

ADOPTED BY THE CITY COUNCIL OF THE CITY OF BURIEN, WASHINGTON, AT A REGULAR BUSINESS MEETING THEREOF THIS 4th DAY OF MARCH 2024.

CITY OF BURIEN

_____
Kevin Schilling, Mayor

ATTEST/AUTHENTICATED:

_____
Heather Dumlao, City Clerk

Approved as to form:

_____
Garmon Newsom II, City Attorney

Filed with the City Clerk: February 27, 2024
Passed by the City Council: March 4, 2024
Ordinance No.: 832
Date of Publication: March 8, 2024