HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PATRICIA COLE-TINDALL, in her official capacity as the King County Sheriff; and KING COUNTY, a home rule charter county,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BURIEN, a municipal corporation,<br><br>Defendant. | CASE NO. 3:24-cv-00325-RAJ<br><br>**ORDER** |

## I. INTRODUCTION

THIS MATTER is before the Court on Plaintiffs' Motion for Preliminary Injunction, Dkt. # 7, and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. # 26. The Court has reviewed the motions, the materials filed in support of the motions, the balance of the record, and the governing law. For the reasons stated below, the Court **GRANTS** Defendant's Motion, Dkt. # 26, and **DENIES** Plaintiffs' Motion, Dkt. # 7, as moot.

ORDER - 1

## II. BACKGROUND

This matter stems from a dispute between Washington governmental entities regarding the constitutionality of a local ordinance. Plaintiffs, King County and Patricia Cole-Tindall, in her official capacity as Sheriff of King County (collectively, "King County Plaintiffs"), initiated this lawsuit in federal court seeking declaratory and injunctive relief. *See* Dkt. # 1; Dkt. # 7. Pursuant to the Interlocal Agreement ("ILA"), King County Sheriff's Office ("KCSO") provides law enforcement services to Defendant, the City of Burien. *See* Dkt. # 7 at 2. KCSO has refused to implement one of Burien's recently enacted ordinances, and King County Plaintiffs now ask this Court to evaluate the constitutionality of that ordinance.

The City Council of Burien adopted Ordinance 832 (the "Ordinance"), titled "Unlawful Public Camping," on March 4, 2024. Dkt. # 1-5. The Ordinance prohibits the use of nonresidential public property as a living space. *Id*. The Ordinance defines this as, "to camp, dwell, lodge, reside, sleep, or exercise nontransitory exclusive control over any portion of nonresidential public property." *Id*. The nonresidential public property includes "any Burien park, street, sidewalk, or any other open area where Burien or another governmental agency has a property interest, including easements." *Id*. The Ordinance provides an exception to the general prohibition when overnight shelter is unavailable, and the use occurs between 7 p.m. and 6 a.m. the following morning. *See id*. Noncompliance with the Ordinance is classified as a misdemeanor offense and may be subject to criminal deferral. *See id*.

In providing law enforcement services to Burien, Sheriff Patricia Cole-Tindall instructed the department not to enforce the Ordinance until "the constitutionality of the ordinance is resolved" because of the "substantial concerns that Burien's new ordinance violates binding federal case law." Dkt. # 1 ¶ 4. Plaintiffs contend that the Ordinance

violates the Eighth and Fourteenth Amendments of the Constitution.[1]  *See* Dkt. # 1 ¶ 59. Plaintiffs acknowledge that King County Sheriff's Office has not enforced Ordinance 832 to date.  Dkt. # 28 at 7.

Defendant argues the Court lacks subject matter jurisdiction to resolve this matter and moves to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1).  Dkt. # 26.  Plaintiffs invoke federal question jurisdiction as no diversity exists between the parties, all based in Washington State. Plaintiffs assert this Court has jurisdiction pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.  *See* Dkt. # 1 at ¶ 10.  Plaintiffs argue that this "case squarely presents questions of federal constitutional law."[2]  Dkt. # 28 at 20.  Defendant raises several arguments in support of dismissal, but the Court will only reach two in the discussion below, Article III limitations on standing and advisory opinions.

### III. LEGAL STANDARDS

**A. Federal Rule of Civil Procedure 12(b)(1)**

Pursuant to Rule 12(b)(1), a complaint must be dismissed if the Court determines at any point that it lacks subject matter jurisdiction over the claims asserted.  *See Int'l Union of Operating Eng'rs. v. Cnty. of Plumas*, 559 F.3d 1041, 1043-44 (9th Cir. 2009). And if a plaintiff lacks standing, the Court lacks subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  A Rule 12(b)(1) challenge

---

[1] Plaintiffs argue that the Ordinance "is repugnant to the Constitution and the law of this circuit, namely *Martin v. City of Boise*, 920 F.3d 584, 618 (9th Cir. 2019) . . . and *Johnson v. City of Grants Pass*, 72 F.4th 868 (9th Cir. 2022) *cert. granted* 144 S.Ct. 679 (2024) (argument set for April 22, 2024)."  Dkt. # 7 at 1.  On June 28, 2024, the Supreme Court reversed and remanded the decision in *City of Grants Pass*, finding that the enforcement of generally applicable laws regulating camping on public property does not violate the Eighth Amendment.  *City of Grants Pass, Oregon v. Johnson*, 144 S. Ct. 2202, 2204 (2024).  This ruling abrogated the Ninth Circuit's decision in *Martin*.

[2] Plaintiffs attempt to use the Mayor of Burien's statement that the constitutionality of Ordinance 832 "is for judges to decide" to support the argument that this Court has jurisdiction over this matter. Dkt. # 28 at 1, 7.  Plaintiffs' efforts are misguided.  The mayor's words have no bearing on whether a federal court may adjudicate a claim regarding the constitutionality of a law that has not been enforced.

may be facial or factual. Fed. R. Civ. P. 12(b)(1); *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, such as this one, a defendant asserts a complaint's allegations are insufficient to confer federal jurisdiction. In reviewing such an attack, the Court assumes all material allegations in the complaint are true. *See Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

## B. Article III Limitations

The judicial power of the federal courts is limited to "cases" and "controversies." U.S. Const., Art. III, § 2. If there is no case or controversy within the meaning of those constitutional terms, then the court lacks subject matter jurisdiction to hear the claim. *See Baker v. Carr*, 369 U.S. 186, 198 (1962). Thus, a federal court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The prohibition against issuing advisory opinions stands at the core of Article III's limitation on federal judicial power and underpins the justiciability doctrines of standing, ripeness, and mootness. *See Westlands Water Dist. v. Nat. Res. Def. Council*, 276 F. Supp. 2d 1046, 1051 (E.D. Cal. 2003); *see also W. Oil & Gas Assoc. v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990) ("The ripeness and mootness doctrines are based in part upon the Article III requirement that courts decide only cases or controversies.").

Constitutional standing is a "necessary element of federal-court jurisdiction." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009). To establish Article III standing, a plaintiff must show that (1) she suffered an injury in fact, (2) there is a causal connection between the injury and the defendants' conduct, and (3) the injury will likely be redressed

by a favorable decision from the Court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

To have standing to sue in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (quoting *Baker*, 369 U.S. at 204). Therefore, a plaintiff must suffer an injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). For an injury to be particularized, it must affect "the plaintiff in a personal and individual way." *Id*. at 560 n.1. A plaintiff typically does not satisfy standing requirements where the alleged injury is a "generalized grievance" that is "shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499.

## IV. DISCUSSION

The briefing in this matter addresses various justiciability questions. However, the Court need only reach the matters discussed below to reach the conclusion that the Court lacks subject matter jurisdiction to hear this case.

### A. Article III Standing

#### 1. Sheriff Cole-Tindall's Standing

King County Plaintiffs assert that an injury in fact has been established because if the Ordinance is enforced, then Sheriff Cole-Tindall "faces the loss of her certification to work as a police officer," which Plaintiffs assert is "a constitutionally protected property interest." Dkt. # 28 at 11. Plaintiffs state that the "conflict between her duty to enforce the law and her equal duty to police in a constitutional manner that cannot be reconciled." *Id*. at 12. In addition, Plaintiffs also suggest that the Sheriff's potential civil

liability may provide a basis for standing. *See id*. at 15-16. Defendant asserts that these standing arguments are premised on a false dilemma. Dkt. # 30 at 6.

The Ninth Circuit has found that public officials challenging the constitutionality of a law typically do not meet Article III standing requirements where plaintiffs assert standing based on potentially violating their oaths of office and facing civil liability. The Court provides an overview of the relevant caselaw below.

In *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, the mayor and city councilmembers of the City of South Lake Tahoe ("councilmembers") sought declaratory and injunctive relief regarding certain land use regulations, regional plans, and transportation plans adopted by the California Tahoe Regional Planning Agency ("Agency"). 625 F.2d 231, 232-33 (9th Cir. 1980). The councilmembers alleged that the regulations and plans violated various federal constitutional guarantees. *See id*. The Ninth Circuit rejected the two theories of standing advanced by the councilmembers.

First, the Ninth Circuit rejected an argument that the councilmembers had standing to challenge a law which they refused to enforce. Councilmembers asserted they had standing to raise this challenge because they were "required by law to enforce the [Agency's] regulations[,]" but if they enforced what they believed to be unconstitutional regulations, the councilmembers "would violate their oaths of office to uphold the U.S. Constitution." *Id*. at 233 (internal citation omitted). The Ninth Circuit determined that the councilmembers failed to meet Article III standing requirements because "the source of the public official's complaint" was simply "abstract outrage at the enactment of an unconstitutional law[,]" and that no consequences, thus no injury, would "flow from the violation of the oath in performance of a statutory duty." *Id*. at 237.

Next, the Ninth Circuit also found that a public officials' "alleged exposure civil liability" was insufficient to show a "concrete injury" for the purposes of standing. *Id*.

at 238. The Court observed there were "multiple contingencies" precluding standing because the challenged law was unenforced, which meant there was "no immediate threat of suit nor reason to believe suit was inevitable." *Id*. at 239. Further, the Court concluded that possibility of civil liability under Section 1983 was insufficient to support standing. The Court remarked that it was unclear that "an official who personally believes a statute to be unconstitutional, but enforces it anyway, is civilly liable solely on the strength of his subjective concerns." *Id*. Accordingly, the Court decided that the "threat of civil liability is too attenuated and conjectural to supply the councilmembers with a basis for standing[,]" and that the "claims do not support federal-court jurisdiction." *Id*.

Since the decision in *City of S. Lake Tahoe*, the Ninth Circuit has continued to reject "oath taker standing" claims because they are "not sufficiently concrete to establish Article III standing." *Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011) (finding an active military personnel's argument that he may face discipline for obeying the president's orders was "highly speculative" and his "abstract constitutional grievance" did not meet the requirements of Article III); *see e.g.*, *Thomas*, 572 F.3d at 762 (finding county attorney lacked standing to challenge the constitutionality of a separate state DUI court system created for Spanish and Native American speakers because the claimed injury was "based on the loss of his institutional power . . . not the loss of any private right"); *Escobar v. Brewer*, No. 10-cv-249, 2010 WL 11537784, at *3 (D. Ariz. Aug. 31, 2010), *aff'd*, 461 F. App'x 535 (9th Cir. 2011) (relying upon *City of S. Lake Tahoe* and finding a police officer lacked standing to challenge the constitutionality of a state immigration law where the plaintiff claimed non-enforcement of the law could lead to discipline and enforcement could lead to possible civil litigation).

Plaintiff Cole-Tindall's alleged injury that enforcement of Ordinance 832 could "result in her loss of her livelihood" and "law enforcement certification" is premised on

her subjective understanding that the Ordinance is unconstitutional. As Defendant puts it, this alleged injury presents a "false dilemma between enforcing the law generally and enforcing the law constitutionally[,]" and enforcing the law would not risk her certification under Washington law. Dkt. # 30 at 7 (citing RCW 43.101.105(3)(j)(ii)). Sheriff Cole-Tindall's circumstances are similar to the dilemmas presented in *City of S. Lake Taho*e, *Drake*, *Thomas*, and *Escobar* where courts found civil servants challenging the constitutionality of certain regulations, executive directives, legal systems, and laws did not establish Article III standing. Accordingly, the Court finds that Sheriff Cole-Tindall's basis for standing is insufficient in this case.

### 2. King County's Standing Based on Potential Civil Liability

Plaintiff King County asserts it has established standing for threatened economic injury. *See* Dkt. # 28 at 10. Plaintiffs argue the County "would be open to civil litigation and potential liability pursuant to 42 U.S.C § 1983" if KCSO enforces a facially unconstitutional ordinance. *See id*.

The potential financial liability King County may face if KCSO enforces the Ordinance and lawsuits are brought against it under Section 1983 is insufficient to satisfy the injury in fact requirement. Here, a public entity, King County, challenges the constitutionality of a law prior to the enforcement and asserts potential civil liability as an injury to support Article III standing. The second theory of standing rejected by the Ninth Circuit in *City of S. Lake Tahoe* decision, discussed in Section IV.A.1., *supra*, plainly applies in this situation and forecloses standing. Like *City of S. Lake Tahoe*, there are multiple contingencies that have yet to be triggered, such as the enforcement of the Ordinance and defending a lawsuit based on the enforcement of the ordinance. Further, as Defendant points out, "King County faces no financial risk for enforcing the Ordinance" because "the ILA indemnifies King County and its employees from liability

for arresting someone under an unlawful ordinance." Dkt. # 30 at 7. Accordingly, the Court concludes that Plaintiffs cannot establish standing based on any attenuated potential civil liability in this matter.

### 3. Conclusion

For the reasons stated above, King County Plaintiffs failed to establish Article III standing to support this Court's subject matter jurisdiction over this dispute. Even if Plaintiffs could meet the requirements for Article III standing, this Court would still dismiss this matter for lack of subject matter jurisdiction because King County Plaintiffs seek an impermissible advisory opinion.

### A. Advisory Opinions

The City of Burien argues that Plaintiffs seek an advisory opinion, thus Plaintiffs' claims are not justiciable. *See* Dkt. # 26 at 16-17; Dkt. # 30 at 2-5. Plaintiffs do not directly address this argument but express disagreement. *See generally* Dkt. # 28. King County Plaintiffs assert this case presents a dispute between parties that have sufficiently adverse legal interests to create a case or controversy ripe for adjudication in federal court. *See generally id*.

"The rule against advisory opinions is 'the oldest and most consistent thread in the federal law of justiciability,' reflecting the same core considerations that underlie the justiciability doctrine more generally." *Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019) (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968)). In order not to violate this rule and present a justiciable dispute, a case must satisfy two requirements. First, the case must present "an honest and actual antagonistic assertion of rights by one [party] against another." *Id*. (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)). Second, the Court "must be empowered to issue a decision that serves as more than an advisement or

recommendation." *Id*. at 1048. "A party does not seek an advisory opinion where 'valuable legal rights . . . [would] be directly affected to a specific and substantial degree' by a decision from the [C]ourt." *Id.* (quoting *U.S. Nat'l Bank*, 508 U.S. at 446).

It is not the place of federal courts to decide the legality or constitutionality of local ordinances prior to enforcement. *See, e.g., Henschen v. City of Houston*, 959 F.2d 584, 589 (5th Cir. 1992) ("It is not this court's proper role to issue advisory opinions on the facial constitutionality of local ordinances."); *11126 Baltimore Boulevard v. Prince George's Cnty.*, 924 F.2d 557, 558 (4th Cir. 1991) (finding county sought an impermissible advisory opinion concerning the constitutionality a zoning ordinance in light of a recent decision in an appellate case). The prohibition against advisory opinions is enforced even when a municipality itself has asked a federal court for such guidance. *See, e.g.*, *Associated Gen. Contractors of America v. City of Columbus*, 172 F.3d 411, 421 (6th Cir. 1999) ("[T]he City expected the district court to provide an advisory opinion regarding the constitutionality of the ordinance . . . [s]uch an opinion is beyond the power of a federal court to provide."); *Int'l Soc'y for Krishna Consciousness of California, Inc. v. City of Los Angeles*, 611 F. Supp. 315 (C.D. Cal. 1984) ("[A] federal court will not, before the law is applied, declare laws to be constitutional, because by doing so the court would issue advisory opinions.")

King County Plaintiffs' request for a declaratory judgment improperly seeks an advisory opinion. Plaintiffs ask the Court to advise whether Ordinance 832 violates the United States Constitution and determine whether suspending the enforcement of a facially unconstitutional ordinance would breach King County's obligations under the ILA. Dkt. # 1 ¶¶ 58-61. The Court understands the parties in this matter honestly dispute the constitutionality of Ordinance 832. However, the legal rights that King County Plaintiffs assert against the City of Burien are nebulous. King County Plaintiffs

essentially ask this Court to advise whether they can avoid civil liability in the event of enforcement and non-enforcement of Ordinance 832. The Court opining on this matter would amount to an impermissible advisory opinion and overstep Article III limitations.

## V. CONCLUSION

For the reasons stated above, Plaintiffs have not established the requirements of Article III standing, thus the Court determines it does not have subject matter jurisdiction to hear this case. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss. Dkt. # 26. The Court **DENIES** Plaintiffs' Motion for Preliminary Injunction as moot. Dkt. # 7.

Dated this 24th day of September, 2024.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge